**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

IN RE: Chapter 11

RIA R SQUARED, INC. Case No. 26-19251 CLC

Debtor.
_______________________________________/

**SHINHAN SECURITIES CO., LTD.'S EMERGENCY MOTION TO CONVERT NON-EVIDENTIARY HEARING ON DEBTOR'S MOTION FOR AUTHORITY TO CONTINUE PAYING POSTPETITION BASE COMPENSATION AND RELATED PAYROLL OBLIGATIONS TO AN EVIDENTIARY HEARING AND TO CONTINUE SUCH HEARING**

(Expedited Consideration Requested)

> Pursuant to Local Rule 9013-1, Shinhan Securities Co., Ltd. ("**Shinhan**") certifies that it has conferred in good faith with counsel for RIA R Squared, Inc. ("**RIA**" or "**Debtor**") on the relief requested herein. Counsel for the Debtor does not agree to continuing the hearing on the motion at issue or such hearing being converted to an evidentiary hearing.

Shinhan, by and through undersigned counsel, respectfully moves this Court for entry of an order converting the hearing currently scheduled for September 9, 2026 on the *Debtor's Motion for Authority to Continue Paying Postpetition Base Compensation and Related Payroll Obligations* [Dkt. No. 67] (the "**Payroll Motion**") from a non-evidentiary hearing to an evidentiary hearing and to continue such hearing. In support of this motion, Shinhan states as follows:

1. Shinhan filed its objection to the Payroll Motion on September 4, 2026 [Dkt. No. 92] (the "**Objection**"). In that Objection, Shinhan raised three grounds for denial: (i) the cash the Debtor proposes to use is Shinhan's cash collateral; (ii) the pending *Motion to Dismiss the Chapter 11 Petition or, Alternatively, for Relief from the Automatic Stay* [Dkt. No. 20] should be resolved

before any insider salaries are paid; and (iii) the Debtor's three insider employees are not performing services that warrant compensation at these levels given that RIA has no operating business.

2. On September 8, 2026, at 3:13 p.m. Eastern Time—19 hours before the 10:30 a.m. hearing on the Payroll Motion—the Debtor filed a *Notice of Filing: Six Month Budget in support of the Payroll Motion* [Dkt. No. 106] (the "**Budget**"). The Budget was not filed with the Payroll Motion. It was produced on the eve of the hearing without an opportunity for Shinhan to seek discovery about the factual assertions it contains. The Budget raises material factual questions that cannot be resolved without an evidentiary hearing and targeted discovery into the nature of the payments being made under the guise of operating expenses. Those questions go to the heart of whether the three insider employees are actually performing services that warrant the compensation sought for the following three reasons:

3. ***First***, the Budget projects that the majority of the Debtor's revenue will come from distributions from the Ducenta 80-20 Unconstrained Fund LP, an entity controlled by Mr. Kang, without disclosing whether Mr. Kang personally benefits from those distributions. Mr. Kang is the Chairman and CEO of Ducenta Squared Asset Management ("**Ducenta**"). The Debtor has not disclosed how much Mr. Kang receives from Ducenta in addition to the RIA salary sought in the Payroll Motion. That omission is material. The Court cannot assess whether the proposed RIA salaries are reasonable without knowing what the same individual is already being paid by Ducenta for managing the same assets. Making matters worse, the Budget also reveals that the Debtor intends to pay approximately $24,600 per month in gross monthly fees to the 80-20 Unconstrained Fund LP itself as an operating expense of this estate, totaling more than $147,000 over six months. The Debtor has provided no explanation for why estate funds should be directed monthly to a fund

controlled by its own CEO, whose compensation from Ducenta has not been disclosed.

4. ***Second***, the Budget discloses that the Debtor intends to pay $15,000 per month to Tim Torline as a consultant, totaling $90,000 over six months, and $10,000 per month in Ducenta Advisory Fees for Bespoke Investments, totaling $60,000 over six months. Mr. Torline is the President of Investments of Ducenta and is presumably already being paid by Ducenta to manage the assets that are Shinhan's collateral. *See* Torline Aff. ¶¶ 1, 10 [Dkt. No. 20-22]. The Debtor has provided no explanation for why it is also contemplating paying Mr. Torline an additional $15,000 per month on top of whatever he already receives from Ducenta for what appears to be the same function. This concern is compounded by the fact that the Debtor's own counsel confirmed at the August 13, 2026 hearing that the so-called "bespoke investments" for which these advisory fees are being paid are, at bottom, a litigation claim against DW Partners that the Debtor believes may be worth approximately $130 million but that remains entirely unliquidated. Aug. 13, 2026 Hr'g Tr. 54:14-55:5. Critically, those same bespoke assets have been asserted under oath to be Shinhan's collateral. Yet the Budget asks this Court to treat $25,000 per month in combined advisory fees for managing those assets as legitimate operating expenses of this estate in order to justify the bloated salaries to the insiders, without any explanation of what services are actually being rendered or why they are necessary for a debtor with no operating business.

5. ***Third***, the Budget also reflects $15,000 per month in travel, meals, and business development expenses, totaling $90,000 over six months, and an additional $10,000 per month in unidentified "miscellaneous operating expenses," totaling $60,000 over six months. The Debtor has not explained who is traveling, where, or for what business purpose, nor has it identified what the miscellaneous operating expenses consist of or to whom they will be paid.

6. The Payroll Motion asks this Court to authorize $924,000 per year in insider

compensation using what Shinhan maintains is its cash collateral to pay three individuals for services performed on behalf of a company that has no operating business and no lending counterparties. The Court needs the benefit of a developed evidentiary record to ascertain whether those salaries are indeed reasonable and appropriate under the circumstances. Based on the revelations in the Budget, they are not. Shinhan respectfully requests that the Court convert the September 9 hearing to an evidentiary hearing on the Payroll Motion and continue it to a date that allows Shinhan a reasonable opportunity to take targeted discovery on the factual issues raised by the Budget.

## CONCLUSION

7. Shinhan respectfully requests that the Court enter an order (i) converting the September 9, 2026 hearing on the Payroll Motion to an evidentiary hearing, (ii) continuing that hearing to a date convenient for the Court that allows adequate time for targeted discovery on the factual issues raised by the Budget, and (iii) granting such other and further relief as the Court deems just and proper.

*[Signature Page Follows]*

Respectfully submitted,

September 9, 2026
Miami, Florida

By: */s/ James N. Robinson*
James N. Robinson (FBN 608858)
Trudy Smith (admitted *pro hac vice*)
**WHITE & CASE LLP**
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: 305-371-2700
Facsimile: 305-358-5744
Email: jrobinson@whitecase.com
trudy.smith@whitecase.com

-and-

Laura Garr (admitted *pro hac vice*)
Andrew Zatz (admitted *pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-819-8200
Facsimile: 212-354-8113
Email: laura.garr@whitecase.com
andrew.zatz@whitecase.com

*Counsel for Shinhan Securities Co., Ltd.*