**ORDERED in the Southern District of Florida on October 2, 2026.**

**Corali Lopez-Castro, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

RIA R SQUARED, INC., Case No. 26-19251-CLC

Debtor. Chapter 11

______________________________________/

# ORDER GRANTING RELIEF FROM AUTOMATIC STAY

THIS MATTER came before the Court for hearing on August 13 and 28, 2026 upon the Emergency Motion by Shinhan Securities Co., Ltd. to Dismiss or, Alternatively, for Relief from the Automatic Stay (the "Emergency Motion") (Dkt. No. 20), including the exhibits submitted in connection therewith, the Debtor's Response and Opposition to the Emergency Motion (Dkt. No. 41), and the Reply to the Debtor's Response and Opposition to the Emergency Motion (Dkt. No. 44). Having considered the foregoing submissions and arguments of counsel, and having directed

the parties to submit competing proposed orders addressing whether the automatic stay applies to Shinhan Securities Co., Ltd. ("Shinhan")'s exercise of its contractual rights under the safe harbor provisions of 11 U.S.C. §§ 362(b)(6) and 555, and this Order being consistent with and in furtherance of the Court's preliminary rulings at the August 13 and 28, 2026 hearings, **the Court hereby FINDS and ORDERS** as follows:

1. RIA R Squared, Inc. (the "Debtor") and Shinhan are parties to a Global Master Securities Lending Agreement (the "GMSLA") and a Supplemental Lending Agreement (the "SLA" and, together with the GMSLA, the "Agreements"). Pursuant to the Agreements, the Debtor deposited securities as collateral into custodial accounts at BNP Paribas (the "Securities"). The Debtor then transferred the Securities to accounts at Wells Fargo and Wilmington Savings Fund Society ("WSFS").

2. On December 9, 2024, the Debtor commenced an action in the Supreme Court of the State of New York, *Ria R Squared, Inc. v. Shinhan Securities Co., Ltd.,* Index No. 659538/2024 (the "New York Action"). The New York Action arises from the parties' dispute under the Agreements. Shinhan subsequently filed counterclaims against the Debtor. The case has been pending since 2024.

3. On July 15, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Shinhan contends that the Securities held in the WSFS accounts are exempt from the automatic stay under the safe harbor provisions of 11 U.S.C. §§ 362(b)(6) and 555, or alternatively that cause exists to grant relief from the stay under § 362(d)(1).

4. Section 362(b)(6) of the Bankruptcy Code provides, in relevant part, that the filing of a Chapter 11 petition does not operate as a stay under subsection (a) of the exercise of a "financial participant" or "stockbroker" of any contractual right (as defined in §§ 555 or 556) under any

securities contract, or of any contractual right (as defined in §§ 555 or 556) "to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with" such securities contract, "including any master agreement for such contracts."

5. Shinhan argues that it qualifies as a "stockbroker" within the meaning of 11 U.S.C. § 101(53A), which requires both that an entity (1) have a "customer," as defined in § 741, and (2) be engaged in the business of effecting transactions in securities for the account of others or with members of the general public, from or for its own account. Shinhan points to its Annual Report (Form 20-F) as support. However, the Court may take judicial notice of the existence and contents of the Form 20-F, but not the truth of the statements contained therein. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). More importantly, the record does not otherwise sufficiently establish that Shinhan has a "customer" within the meaning of § 741. Thus, although the Court is persuaded that Shinhan is a stockbroker, the record is insufficient to make that finding under § 101(53A).

6. Shinhan also asserts that it qualifies as a "financial participant" within the meaning of 11 U.S.C. § 101(22A), pointing to the Agreements and the Debtor's initial schedules. The Debtor disputes that finding, arguing that Shinhan provided no calculation, valuation evidence, or transaction level support demonstrating that the statutory gross mark-to-market threshold was satisfied when required. Although the Debtor's schedules identify claims against Shinhan valued at $562 million based on "Contract Default Market Values," they do not expressly establish that this amount constitutes "gross mark-to-market positions" under § 101(22A) at the applicable statutory time. Thus, while the current record provides substantial support for Shinhan's position, the Court declines to make that express finding on the present record.

7. Accordingly, the Court declines to rule on the applicability of the safe harbor provisions on the current record. While an evidentiary hearing would be necessary to resolve those issues, holding such hearing would only further delay resolution of the underlying dispute between the parties. Instead, the Court finds that cause exists to grant Shinhan relief from the automatic stay under § 362(d)(1), rendering an evidentiary hearing on the safe harbor issues unnecessary.

8. Section 362(d)(1) provides that, upon request of a party in interest and after notice and a hearing, the Court shall grant relief from the automatic stay "for cause." Whether cause exists is determined on a case-by-case basis based on the totality of the circumstances, and the decision is ultimately up to the sound discretion of the Court. *See In re Feingold*, 730 F.3d 1268, 1276–77 (11th Cir. 2013); *In re Murray Indus., Inc.*, 121 B.R. 635, 636–37 (Bankr. M.D. Fla. 1990). In determining whether to grant stay relief to permit litigation to continue in another forum, courts have recognized that the legislative history of § 362 reflects Congress's intent that the stay be lifted in circumstances where allowing proceedings to continue in their original forum is more appropriate and would not result in substantial prejudice to the bankruptcy estate. *In re Makarewicz*, 121 B.R. 262, 264 (Bankr. S.D. Fla. 1990).

9. The test for determining whether to lift the automatic stay to allow continuation of a pending lawsuit considers whether:

> "a) Any 'great prejudice' to either the bankrupt estate or the debtor will result from continuation of a civil suit,
>
> b) the hardship to the [non-bankrupt] by maintenance of the stay considerably outweighs the hardship of the debtor, and
>
> c) the creditor has a probability of prevailing on the merits of his case."

*Id.* at 265 (citations omitted).

10. Starting with the first factor, permitting the New York Action to proceed will not result in great prejudice to the bankruptcy estate or the Debtor. The Debtor chose to litigate the parties' dispute in New York, where the proceedings are already far advanced. The Court takes judicial notice of the docket in the New York Action, which reflects substantial prepetition activity. *See Griffin v. Verizon Commc'ns Inc.*, 746 F. App'x 873, 876 (11th Cir. 2018) ("Courts typically take judicial notice of record documents from other judicial proceedings.") (citations omitted).[1] Although the Debtor argues that the bankruptcy filing gives rise to additional bankruptcy-specific issues, those issues may be reserved for determination by this Court, if necessary, without preventing the New York court from resolving the parties' prepetition dispute.

11. Second, the hardship to Shinhan from maintaining the stay outweighs any resulting hardship to the Debtor. Shinhan already expended substantial time and resources litigating the New York Action, and maintaining the stay would further delay resolution of the parties' dispute after approximately a year and a half of litigation. The Debtor, by contrast, would be required to continue litigating in the forum it selected and in which it was actively litigating before the Petition Date. Furthermore, the Debtor has retained both New York counsel and local counsel. In seeking approval of special counsel, the Debtor represented that both firms were necessary given the uncertainty as to whether the litigation would proceed in New York or Florida and to ensure that whichever firm ultimately takes the lead would be prepared to do so. On balance, the Court finds that the hardship to Shinhan in further delaying resolution of the New York Action outweighs any hardship to the Debtor from having to continue litigation in the forum it selected and for which it has already retained counsel.

[1] The New York Action online docket can be found at https://iapps.courts.state.ny.us/webcivil/FCASSearch?param=I using Index Number 659538/2024.

12. Third, the record sufficiently supports Shinhan's probability of prevailing on the merits for the purpose of stay relief. The New York court has granted Shinhan partial injunctive relief, and the parties' claims and defenses remain actively disputed. The Court does not determine the ultimate merits of those claims but finds that this factor does not weigh against stay relief.

13. Accordingly, it is **ORDERED** that Shinhan's request for relief from the automatic stay is **GRANTED** pursuant to 11 U.S.C. §§ 362(d)(1) to allow the parties to continue litigating the New York Action through the entry of final judgment.

14. This Order only grants relief from the automatic stay and does not determine the existence, scope, validity, or enforceability of any underlying contractual or property rights asserted by the parties.

15. Nothing in this Order shall be construed as a determination of, and this Order is entered without prejudice to, Shinhan's motion to dismiss this Chapter 11 case which remains under advisement and subject to further hearing on October 13, 2026.

16. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

17. This Order shall be effective immediately upon entry. The fourteen (14) day stay of this Order otherwise provided by Federal Rule of Bankruptcy Procedure 4001(a)(4) is hereby WAIVED.

###

Copies furnished to:

Laura Garr
Andrew Zatz
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-819-8200

Facsimile: 212-354-8113
Email: laura.garr@whitecase.com
andrew.zatz@whitecase.com

and

James N. Robinson
Trudy Smith
**WHITE & CASE LLP**
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: 305-371-2700
Facsimile: 305-358-5744
Email: jrobinson@whitecase.com
trudy.smith@whitecase.com

*James N. Robinson, Esq. is directed to serve a conformed copy of this order on the Master Service List and file a certificate of service with the Court.*